AMERICAN AIR PARCEL FORWARDING COMPANY, LTD., a Hong Kong Corporation, Plaintiff,

v.

UNITED STATES, Defendant.

Court No. 81–4–00428.

United States Court of International Trade.

May 15, 1981.

Richard A. Kulics, Detroit, Mich., for plaintiff; Goodman, Miller & Miller, by Jonathan Miller, Southfield, Mich., of counsel.

Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C., for defendant; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, New York City, and Susan L. Handler-Menahem, Teaneck, N.J., of counsel.

*Memorandum and Order On Plaintiff's Motion for a Preliminary Injunction*

RE, Chief Judge:

Plaintiff, a foreign freight forwarder, moves this court for an order enjoining the defendant, through its agent, the United States Customs Service, from (1) continuing the denial, by the District Director of Customs at the Port of Detroit, of plaintiff's "immediate delivery privilege", and (2) refusing to accept, for the benefit of plaintiff, the filing of entry documentation with uncertified checks, during the pendency of this action.

Plaintiff's motion for a preliminary injunction under Rule 65 was brought on by an Order to Show Cause issued on April 20, 1981. The court heard oral argument on the motion by a telephone conference call on April 22, 1981.

On April 27, 1981, the court granted plaintiff's motion for a preliminary injunction. This opinion incorporates that order, and sets forth the facts and reasons upon which the requested relief was granted.

Plaintiff is a freight consolidator with its principal place of business in Hong Kong. Plaintiff consolidates freight owned by various shippers for delivery to specific consignees in the United States. In importing merchandise, plaintiff prepares a consolidated entry, enters the goods, pays the duty, and then, through the use of common carriers such as United Parcel Service, delivers the goods to the ultimate consignee. As a course of business plaintiff posts single entry bonds to indemnify the Customs Service for any loss of revenue.

Plaintiff alleges that while "it must ordinarily pay duties on entered merchandise within ten working days", it does not receive those monies until twenty-nine days later. Plaintiff recoups the monies by shipping the goods C.O.D. to the consignee.

Plaintiff routinely imports merchandise each week through the Port of Detroit and pays duty on the merchandise by uncertified check. Plaintiff received a shipment on March 27 and March 30, 1981, on which duties were due on April 10 and April 13, 1981, respectively. Plaintiff claims that several days prior to April 10, 1981 the import control officer in Detroit stated that, beginning with the April 10 entry,

plaintiff would have to pay the duty on that and all future entries by certified check. Plaintiff alleges the reason for the Customs Service's action was that certain uncertified checks issued the prior year had been dishonored. The defendant stated that it erred in continuing to accept uncertified checks and advised plaintiff that it would now require plaintiff's checks to be certified.

Plaintiff questioned the import control officer on the applicability of Customs Regulation 24.1(a)(3). This regulation authorizes an importer to present uncertified checks when the revenue is protected by the posting of a single entry bond for the full value of the duties owing on the shipment. Plaintiff alleges that the import control officer responded by stating that the decision was final, and that plaintiff could challenge the decision by submitting an entry with an uncertified check, having it rejected, and then filing a protest.

Plaintiff filed its entries on April 10 and April 13, 1981, with uncertified checks, both of which were rejected. On April 6, 1981, plaintiff received a letter from the acting District Director stating that certified checks would be required with all plaintiff's entries, and that plaintiff's immediate delivery privileges were suspended.

The parties raise basic questions pertaining to the jurisdiction of the court, the validity of the plaintiff's cause of action, and the "equity jurisdiction" of the court.

■ The court's authority to grant the requested relief presents the threshold question of whether the action is within its subject matter jurisdiction. Subject matter jurisdiction is the power of a court to hear and determine cases of the general class to which the particular proceeding belongs. *See Murrell v. Stock Growers' National Bank*, 74 F.2d 827, 831 (10th Cir. 1934), and cases cited therein. The subject matter jurisdiction of the Court of International Trade, as established by the Customs Courts Act of 1980, encompasses all "civil actions arising out of import transactions and the Federal statutes affecting international trade". 126 Cong.Rec. H9340 (daily ed.

Sept. 22, 1980) (remarks of Rep. Volkmer). Upon the facts recited, it is clear that plaintiff's case comes within the general class of cases over which this court has subject matter jurisdiction.

Jurisdiction, the power of this court to determine the case presented for decision, exists by virtue of the statutory provisions of the Customs Courts Act of 1980. More specifically, this case comes within the broad "residual grant of jurisdictional authority" of this court as described in 28 U.S.C. § 1581(i). H.R.Rep.No.1235, 96th Cong. 2d Sess. 47, U.S.Code Cong. & Admin. News 1980, 7088 (1980). In particular, paragraphs (i)(1) and (4) confer jurisdiction over any civil action

"that arises out of any law of the United States providing for—

"(1) revenue from imports or tonnage;

\*    \*    \*    \*    \*    \*

"(4) administration and enforcement with respect to matters referred to in paragraphs (1)–(3) of this subsection . . ."

This court's jurisdiction over plaintiff's cause of action "arises out of [a] law of the United States", namely, 19 U.S.C. § 1648, and the Customs Service's administration and enforcement of its regulations. See 19 C.F.R. §§ 24.1(a)(3) and 142.13(a). These regulations authorize customs officers to receive uncertified checks in payment of duties upon the filing of an entry bond, and to require the deposit of estimated duties and the filing of entry summary documentation before release of the goods if the importer "has failed repeatedly to file entry summary documentation without justification".

In several cases since November 1, 1980, the effective date of the Customs Courts Act of 1980, this court has found subject matter jurisdiction to exist within the statutory language embodied in 28 U.S.C. §§ 1581(i)(1) and (4). *See generally, Heraeus-Amersil, Inc. v. United States*, 1 CIT ——, 515 F.Supp. 770 (1981); *DiJub Leasing Corp. v. United States*, 1 CIT ——, 505 F.Supp. 1113 (1980); *Zenith Radio Corp. v.*

*United States,* 1 CIT ——, 505 F.Supp. 216 (1980).

Section 1581(i) was apparently drawn from 28 U.S.C. § 1331, the federal question jurisdictional provision with respect to United States district courts. Section 1581(i) may be said to accomplish, as to the Court of International Trade, the purpose served by § 1331 for the district courts.

Although the United States Court of International Trade may have subject matter jurisdiction, there remains the possibility that a particular complaint may not state a cause of action upon which relief may be granted.

■ This point is illustrated by the case of *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1945). In *Bell v. Hood,* the Supreme Court of the United States, holding that the subject matter jurisdiction of a court cannot be defeated by the "possibility" that plaintiff's allegations may fail to state grounds upon which the requested relief may be granted, observed:

> "[F]ailure to state a proper cause of action calls for a judgment on the merits and not a dismissal for want of [subject matter] jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction." *Id.,* at 682, [66 S.Ct. at 776,] citing *Swafford v. Templeton,* 185 U.S. 487, 493, 494, [22 S.Ct. 783, 785, 786, 46 L.Ed. 1005;] and *Binderup v. Pathe Exchange,* 263 U.S. 291, 305–8, [44 S.Ct. 96, 98–99, 68 L.Ed. 308.]

■ As was made clear in *Bush v. State Industries, Inc.,* 599 F.2d 780, 784 (6th Cir. 1979), in determining the existence of subject matter jurisdiction, a court must examine the alleged claim to see if it "actually 'arises under' the Constitution or federal statutes and is not made solely for the purpose of obtaining jurisdiction". If the case "arises under" the Constitution or the federal statutes, the existence of subject matter jurisdiction is not to be confused with ultimate success on the merits after trial.

■ The crucial question that the court must decide in each case is whether plaintiff's complaint has "any legal substance", in coming within the subject matter jurisdiction of the court. *Bush,* at 784–785. The failure to state a cause of action upon which relief can be granted is not relevant to the court's determination of the existence of its subject matter jurisdiction. *Bush,* at 785. The court must assume or exercise its jurisdiction in order to determine whether or not the complaint states a cause of action on which it may grant relief. *Bell,* at 682, 66 S.Ct. at 776.

■ Jurisdiction, the power to decide a case presented for adjudication, should not be confused with a court's so-called "equity jurisdiction". When a court has jurisdiction over the subject matter and the parties, it has the power to decide the case, and "equity jurisdiction" can only refer to its authority and discretion to grant equitable relief. The words refer to those types or classes of cases formerly heard by courts of equity, as distinguished from the ordinary courts of law. In view of the merger of law and equity, the courts may grant any proper relief whether formerly denominated legal or equitable. Hence, to say that a court has "equity jurisdiction" is merely to say that it is authorized to exercise those equitable powers formerly devised or exercised by courts of equity. As a practical matter, it implies that a court is authorized to grant or withhold any of the equitable remedies.

■ On the court's authority to grant an equitable remedy, it must be noted that the general powers of the federal courts, when sitting as courts of equity, can only be exercised in cases within their subject matter jurisdiction as defined by Congress. *Sprague v. Ticonic Bank,* 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); *Mason v. United States,* 260 U.S. 545, 43 S.Ct. 200, 67

L.Ed. 396 (1923). By the Customs Courts Act of 1980, Congress has clearly defined this court's subject matter jurisdiction and remedial powers. Congress has thereby conferred upon this court the statutory authority and power to grant the equitable relief requested. Since the court is expressly authorized to grant an equitable remedy, it may grant plaintiff the requested relief. 28 U.S.C. § 1585; 28 U.S.C. § 2643(c)(1). Therefore, since the court has jurisdiction, there is no question as to its authority or power to do equity in the case at bar.

In enacting the Customs Courts Act of 1980, Congress indicated that the United States Court of International Trade "is to be guided by the same factors utilized by a federal district court when it considers a request for a preliminary ... injunction". H.R.Rep.No.1235, 96th Cong., 2d Sess. 61, U.S.Code Cong. & Admin.News 1980, 7132 (1980). The four factors most generally considered were applied by this court in the *DiJub Leasing Corp.*, and *Zenith Radio Corp.* cases. *See Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C.Cir.1977), and *Virginia Petroleum Jobbers Association v. F. P. C.*, 259 F.2d 921 (D.C.Cir.1958). *See also A. O. Smith Corp. et al. v. F. T. C.*, 530 F.2d 515 (3d Cir. 1976).

More recently, the relevant factors were succinctly set forth by the United States Court of Customs and Patent Appeals in *S. J. Stile Associates Ltd. v. Dennis Snyder*, 67 CCPA ——, C.A.D. 1261, 646 F.2d 522 (1981): "(1) a threat of immediate irreparable harm; (2) that the public interest would be better served by issuing than by denying the injunction; (3) a likelihood of success on the merits; and (4) that the balance of hardship on the parties favored [plaintiff]".

It is not questioned that a request for a preliminary injunction is of an extraordinary nature which should be granted sparingly, *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C.Cir.1969). Indeed, it has been said that it should be granted only upon a clear showing that the movant is entitled to the requested relief. *Flintkote Co. v. Blumenthal*, 469 F.Supp. 115, 125–126 (N.D.N.Y.1979), *aff'd*, 596 F.2d 51 (2d Cir. 1979). Although plaintiff bears the burden of persuasion, and a heavy burden of producing evidence, the applicable case law does not require that plaintiff sustain that high burden of proof as to each of the four factors. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, and *Virginia Petroleum Jobbers Association v. F. P. C., supra*. Rather, the "balance-of-hardship" test, referred to in *S. J. Stile Associates Ltd., supra*, permits the court to exercise a sound discretion and flexibility in the interaction of the four factors in granting or denying the request for interlocutory injunctive relief.

In *Holiday Tours*, the Court of Appeals for the District of Columbia refined its holding in the *Virginia Petroleum Jobbers* case. In so doing, Judge Leventhal stated that the court was following the established practice in other courts by moving "away from a standard incorporating a wooden 'probability' requirement and toward an analysis under which the necessary showing on the merits is governed by the balance of equities as revealed through an examination of the other three factors". *Holiday Tours*, at 844. The court relied upon the "leading case" from the Second Circuit, *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953), which explained:

"To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i. e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation."

*Holiday Tours*, at 844. The court also quoted from a more recent Second Circuit decision, *Charlie's Girls, Inc. v. Revlon, Inc.*, 483 F.2d 953, 954 (2d Cir. 1973) (per curiam), which phrased the test as follows:

"One moving for a preliminary injunction assumes the burden of demonstrating either a combination of probable success and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor."

Summarizing for the court in *Holiday Tours*, Judge Leventhal wrote:

"We believe that this approach is entirely consistent with the purpose of granting interim injunctive relief, whether by preliminary injunction or by stay pending appeal. Generally, such relief is preventative, or protective; it seeks to maintain the status quo pending a final determination of the merits of the suit. An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant. There is substantial equity, and need for judicial protection, whether or not movant has shown a mathematical probability or success."

In the recent case of *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir. 1977), the Fourth Circuit discussed in great depth the balance-of-hardship test. Initially, the court must balance "the 'likelihood' of irreparable harm to the plaintiff against the 'likelihood' of harm to the defendant". *Blackwelder*, at 195. There is a correlation between the likelihood of success on the merits, and the probability of irreparable injury without the issuance of the preliminary injunction. The courts utilize a sliding scale. For example, in *Telvest, Inc. v. Bradshaw*, 618 F.2d 1029, 1032–1033, the Court of Appeals for the 4th Circuit indicated:

"If the harm to the plaintiff greatly outweighs the harm to the defendant, then enough of a showing has been made to permit the issuance of an injunction, and plaintiff need not show a likelihood of success on the merits, for a grave or serious question is sufficient. But as the harm to the plaintiff decreases, when balanced against the harm to the defendant, the likelihood of success on the merits becomes important."

Thus, "[t]he importance of probability of success increases as the probability of irreparable injury diminishes, . . . and where the latter may be characterized as simply 'possible' the former can be decisive". *Blackwelder*, at 195. These factors, albeit significant, must be considered together with the potential harm to the public interest by the granting or denial of injunctive relief.

In *Blackwelder*, the court stated that "[t]he balance of hardship test correctly emphasizes that, where *serious* issues are before the court, it is a sound idea to maintain the *status quo ante litem*, provided that it can be done without imposing too excessive an interim burden upon the defendant". [Emphasis in original.] *Blackwelder*, at 194–195. See also *Hamilton Watch Co.*, at 740. As may be noted, therefore, the balance of hardship test is the proper standard for the granting or withholding of interlocutory injunctive relief.

In considering a request for a preliminary injunction, this court will consider the four factors set forth in *S. J. Stile Associates Ltd., supra*, and will ascribe to each factor its proper weight. While considering the public interest in all cases, the critical factors are the probability of irreparable injury to the movant should the equitable relief be withheld, and the likelihood of harm to the opposing party if the court were to grant the interlocutory injunction. Although the extraordinary remedy of a preliminary injunction is not available unless the moving party's burden of persuasion is met as to all four factors, the showing of likelihood of success on the merits is in inverse proportion to the severity of the injury the moving party will sustain without injunctive relief, i. e., the greater the hardship the lesser the showing.

In the case at bar, the court has carefully reviewed plaintiff's moving papers and the record to determine if there is a sufficient showing of irreparable injury to plaintiff without the issuance of the preliminary injunction. Plaintiff alleges that it predi-

cates its business operations on processing imported merchandise through Customs under an immediate delivery privilege. Upon release of the goods, plaintiff immediately ships them C. O. D. by common carrier to the ultimate consignee. Under this arrangement, plaintiff must await reimbursement for payment of any duties from the common carrier. Payment is often in the form of uncertified checks from the ultimate consignees which must await bank clearance for ultimate collection by plaintiff. Although the court will not comment upon the method by which plaintiff conducts its business, it is aware of the possibility of irreparable harm if plaintiff's immediate delivery privileges are revoked. The revocation can cause significant disruption of plaintiff's business operations, as well as further delays in its collection process.

Plaintiff has raised serious questions as to whether it "has failed repeatedly . . . without justification", under the terms of 19 C.F.R. § 142.13, to file the proper entry documentation with Customs to warrant revocation of its immediate delivery privileges. Plaintiff alleges that for the past ten years, save one instance in April, 1980, it has complied with the applicable Customs regulations for immediate delivery privileges, and has not made repeated untimely filings. Furthermore, plaintiff contends that the two entries in question do not constitute a repeated failure to file timely entry documentation, and that, in any event, it had adequate justification.

Plaintiff also raises important questions whether it has complied with the requirements of 19 C.F.R. § 24.1(a)(3), by payment of duties with an uncertified check secured by an entry bond or other bond, and whether that regulation permits plaintiff to pay liquidated as well as estimated duties by uncertified check. Plaintiff maintains that the rejection of its entries of April 10 and April 13, 1981, because of the proffered payment of estimated duties by uncertified check, is illegal and an abuse of discretion in light of 19 U.S.C. § 1648 and the applicable regulations.

Plaintiff, moreover, asserts that the defendant's revenue from estimated duties is clearly protected by virtue of its "posting of a single entry bond for the full value of the shipment and the duties owing thereon". In a footnote in its memorandum in opposition to plaintiff's motion for a preliminary injunction, the defendant has responded that "an entry bond does not protect the revenue insofar as estimated duties are concerned as that bond only related to liquidated duties". This issue alone presents a serious, substantial and difficult question of law which bears heavily on the ultimate outcome of the case before the court. Therefore, it is clear that the legal issues raised by plaintiff are sufficient to be considered "fair ground for litigation and thus for more deliberate investigation". *Hamilton Watch Co.*, at 740.

Since, on balance, the equities are in plaintiff's favor as to the issuance of the preliminary injunction, the court must examine the potential interim burden on the defendant, and the public interest. Defendant states that it has a statutory obligation under 19 U.S.C. § 1484(a)(2)(C) to protect the revenue from imports "to the maximum extent practicable", and must accord equal treatment to "all consignees of imported merchandise". Defendant further contends that an immediate delivery permit is a privilege which allows plaintiff to obtain immediate release of goods without depositing estimated duties until ten days later. Defendant also asserts that plaintiff has abused this privilege through the untimely filing of entry summary documentation without justification, including the deposit of any estimated duties, and that plaintiff should not be permitted to take advantage of that abuse. According to defendant, "continuance of this privilege would not protect the revenue of the United States".

Finally, defendant states that, since plaintiff cannot pay the estimated duties when its merchandise is released, it may be undercapitalized. It submits, therefore, that the public should not be expected to serve as plaintiff's creditor by subsidizing its business operation.

The court is not unmindful of defendant's argument. It is of the opinion, nevertheless, that, in granting plaintiff's request for relief, the public interest and the revenue derived from import duties can be adequately protected by security in an appropriate amount in accordance with Rule 65(c) of the Rules of the United States Court of International Trade. Under that rule, the security will protect defendant for "such costs and damages as may be incurred or suffered" if it is found to have been wrongfully enjoined by this court.

In sum, the court has considered the balance between the potential harm to the defendant by granting the requested relief, the possibility of irreparable injury to plaintiff were the relief to be denied, and the serious questions of law and fact that have been presented. Under all of the circumstances, the court has concluded that a preliminary injunction should issue, conditioned upon plaintiff giving security of $300,000, the amount suggested by defendant.

Subsequent to the issuance of the order of April 27, 1981, the court was advised that the parties reached an agreement on the posting of security. The terms agreed upon provide that plaintiff will continue to file single entry bonds, and will continue to maintain its term bond on file with the District Director of Customs, Detroit, Michigan, in the amount of $150,000. In addition, the agreement provides that plaintiff shall file a bond in the amount of $25,000 with the Court of International Trade, in accordance with Rule 65(c) of the Rules of this court, to secure defendant against the payment of any costs and damages that may be incurred by it pending the resolution of this action.