AMERICAN AIR PARCEL FORWARDING COMPANY, LTD., A HONG KONG CORPORATION; AND E. C. MCAFEE COMPANY, A MICHIGAN CORPORATION, FOR THE ACCOUNT OF AMERICAN AIR PARCEL FORWARDING COMPANY, LTD., PLAINTIFFS *v.* UNITED STATES OF AMERICA; THE SECRETARY OF THE TREASURY; UNITED STATES CUSTOMS SERVICE; THE COMMISSIONER OF CUSTOMS, UNITED STATES CUSTOMS SERVICE; THE ASSISTANT COMMISSIONER OF CUSTOMS (COMMERCIAL OPERATIONS), UNITED STATES CUSTOMS SERVICE; DIRECTOR, OFFICE OF REGULATIONS AND RULINGS, UNITED STATES CUSTOMS SERVICE; AND DISTRICT DIRECTOR OF CUSTOMS, UNITED STATES CUSTOMS SERVICE, DETROIT, MICHIGAN; JOINTLY AND SEVERALLY, DEFENDANTS

Court No. 82-2-00165

Before LANDIS, *Judge.*

(Dated August 31, 1982)

*Richard A. Kulics,* attorney for plaintiff E. C. McAfee Company, a Michigan Corporation, for the Account of American Air Parcel Forwarding Company, Ltd.

*Goodman, Miller & Miller (Jonathan Miller* of counsel) for the plaintiff American Air Parcel Forwarding Company, Ltd., a Hong Kong Corporation.

*J. Paul McGrath,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch *(Susan L. Handler-Menahem* and *Madeline Kuflik* of counsel) for the defendants.

LANDIS, *Judge:* In this action involving the valuation of made-to-measure clothing produced in Hong Kong, plaintiffs move for a preliminary injunction pursuant to Rule 65 of this Court.

The court held a hearing on the preliminary injunction motion and, during the hearing, denied defendant's motion to dismiss the action (R-9). Defendant further moved to quash certain subpoenae duces tecum and for a protective order regarding certain documents. The court reserved ruling as to the documents in issue, ordering that they be produced for an *in camera* inspection to determine whether they could be released to opposing counsel. The court permitted the subpoenaed witnesses to testify only as to matters outside the scope of the documents submitted for the *in camera* inspection.

Subsequently, the court promulgated a written order holding that documents related to an ongoing criminal proceeding which may be seriously impaired, if not completely abrogated, if the documents were released even under protective order. The court also ordered that both sides submit supplemental memoranda if they so desired.

After submission of said memoranda a further hearing was held on the preliminary injunction motion. Since the latter hearing

plaintiffs have submitted a motion to file a supplemental memorandum of law, opposed by defendant and, additionally, have filed a motion for summary judgment.

The factual background indicates that on October 17, 1980, the United States Customs Service issued a ruling, *Export Value: Dutiability of Sales from Manufacturers to Distributors,* C.S.D. 81–72, (TAA # 10). This ruling was premised upon the facts that distributors in Hong Kong employ representatives who take orders from customers in the United States. The distributors then contract with various small tailoring establishments in Hong Kong to produce the garments.[1] These tailors are responsible for all aspects of production including the purchasing of fabrics from piecegood houses. The tailors sell the completed garments to the distributors.

This ruling basically held that the sales between tailors and distributors in Hong Kong of made-to-measure clothing are appropriate for establishing export value provided the price to the distributors includes all the essential elements of value, including the costs incurred by the tailors in purchasing the required fabrics. The ruling further held that under the specific circumstances of this case, sales between tailors and distributors in Hong Kong may be used to establish the price actually paid or payable for the merchandise when sold for exportation to the United States under section 402(b) of the Trade Agreements Act of 1979, providing the requirements set forth in that statutory provision for establishing transaction value are satisfied.

It should be noted that C.S.D. 81–72 is a response to a memorandum by the District Director of Detroit, Michigan, dated January 16, 1980, which requested internal advice regarding the importation of made-to-measure clothing from Hong Kong. It was based upon unverified facts submitted in the internal advice request and apparently upon some information furnished by plaintiff American Air Parcel's attorney. By memorandum dated October 8, 1980, the Director, Duty Assessment Division, Headquarters, requested the Office of Investigations to initiate an inquiry to verify the description of the Hong Kong wearing apparel trade.

On March 12, 1981, the District Director, Port of San Francisco, requested Headquarters to reconsider ruling TAA # 10 submitting a memorandum in support thereof.

On July 23, 1981, Headquarters (Director, Classification and Value Division) affirmed TAA # 10. This ruling was based upon the description of the Hong Kong apparel trade as set forth in the original internal advice request of which TAA # 10 was a product.

On August 21, 1981, the Office of Regulations and Rulings reported that they reviewed and analyzed various other rulings and re-

---

[1] These small tailoring establishments allegedly belong to the *Hong Kong Tailoring Contractors Association.* This association meets each year and sets the uniform price that is to be paid by buyers for cut, make and trim operations.

ports [2] and concluded that the trade patterns in the made-to-measure clothing industry in Hong Kong conflict with a decision relied upon for the issuance of TAA#10 and other rulings.

On September 9, 1981, the United States Customs Service issued an internal, unpublished telex from Headquarters to the field offices requiring the assessment of duties *on the basis of the price paid by the United States consumer to the Hong Kong distributor* instead of the price paid by the Hong Kong tailor to the Hong Kong distributor. This, in effect, completely abrogated ruling TAA#10.

Plaintiff's Freedom of Information Act (FOIA) request for the evidentiary basis of this decision was denied on September 29, 1981, and said denial was affirmed by the United States Customs Service following plaintiff's administrative appeal on the ground that the Customs investigation had been converted into an enforcement proceeding.

Plaintiff next made an informal administrative appeal to U.S. Customs Service Headquarters. During the pendency of this hearing several hundred entries previously made were immediately liquidated on the basis of the upublished telex of which plaintiff was not officially informed of until October 19, 1981. On December 3, 1981, plaintiff participated at a hearing held in U.S. Customs Service Headquarters in Washington, D.C.

Plaintiff, an American firm with offices in Hong Kong, consolidates large shipments of these completed garments in Hong Kong and forwards them to Detroit by air freight. This firm files entries in Detroit, allegedly paying required duties from their own account, and then further forwards the garments, C.O.D., by commercial carrier, (such as United Parcel Service), to the ultimate United States purchaser. Included in the C.O.D. payment is the duty that plaintiff is responsible to pay. Once plaintiff receives the C.O.D. payment, it cannot look to the ultimate purchaser nor the distributor to subsidize any increase in duty. Plaintiff argues that it is particularly injured by the abrogation of TAA#10 because it relied upon this ruling in setting its ultimate C.O.D. charges. Plaintiff states that such injury is sufficient to drive it out of business.

Plaintiffs seek the following relief: (1.) Reinstatement of the C.S.D. 81–72 ruling which holds that sales between tailors and distributors in Hong Kong of made-to-measure clothing are appropriate for establishing export value; (2.) Enjoining the Customs Service from liquidating the subject made-to-measure clothing; (3.) Cancelling prior liquidations of made-to-measure clothing not in accordance with C.S.D. 81–72; (4.) Allowing all protests with respect to entries liquidated under the September 9, 1981 telex; and (5.) Re-

---

[2] These rulings and reports include:
  Made to Measure Clothing from Hong Kong; TAA#10, dated October 17, 1980; Headquarters Ruling 542406, dated July 23, 1981; Hong Kong Report of Investigation HR01CR103504, dated June 12, 1981; Detroit, Michigan and San Francisco, California Analyses of Report of Investigation, dated August 5, 1981, and August 7, 1981, respectively.

quiring the Customs Service to provide a record of the legal or factual differences found in any Report of Investigation or in any other manner, disagreeing with the facts in TAA # 10, and the facts presented at the December 3, 1981, hearing held in Washington, D.C., which are material and relevant to the treatment of the transactions between Hong Kong firms and distributors.

The revocation of C.S.D. 81–72 (TAA # 10) is not explained by defendant. It may have been based upon an investigation, the report of which has been determined confidential by this Court because it involves an ongoing investigation that could lead to criminal sanctions and penalties against officers of plaintiff American Air. On the other hand it may have been based upon other factors unbeknown to the court. In any event, this is a motion for a preliminary injunction.

Generally, four conditions must be met before a preliminary injunction is granted. There must be a threat of immediate irreparable harm; a showing that the public interest would be better served by issuing than by denying the injunction; that there is a likelihood of success on the merits; and that the balance of hardship on the parties favors the party seeking injunctive relief. *S. J. Stile Associates Ltd.* v. *Dennis Snyder,* 68 CCPA 27 C.A.D. 1261, 646 F.2d 522 (1981); *Asher* v. *Laird,* 475 F.2d 360 (D.C. Cir. 1973); *American Air Parcel Forwarding Co.* v. *United States,* 1 CIT 293, 515 F. Supp. 47 (1981); *PPG Industries, Inc.* v. *United States,* 2 CIT 11 (1981).

It is the party seeking the preliminary injunction who has the burden of demonstrating the existence of the four factors or a proper combination thereof. *Hamilton Watch Co.* v. *Benrus Watch Co.,* 206 F.2d 738 (2d Cir. 1953); *Charlie's Girls, Inc.* v. *Revlon, Inc.,* 483 F.2d 953 (2d Cir. 1973). It is generally the purpose of a preliminary injunction to grant a party a meaningful opportunity to present his case at a full trial on the merits and to obtain proper relief if so warranted. *Washington Metropolitan Area Transit Commission* v. *Holiday Tours, Inc.,* 559 F.2d 841 (D.C. Cir. 1977). Its nature is essentially to preserve the status quo pending final determination after a full hearing. *Checker Motors Corp.* v. *Chrysler Corp.,* 405 F.2d 319 (2d Cir. 1969).

It is against this criteria that the court will examine plaintiffs' motion for a preliminary injunction and evaluate the substantiating evidence.

. In reviewing reasonable likelihood of success on the merits standard, it must be remembered that C.S.D. 81–72 (TAA # 10) is an official ruling by Customs Headquarters. It was promulgated after a request for internal advice and subsequently published in the Customs Bulletin (15 Cust. B. & Dec. Vol. 10, p. 45) pursuant to 19 CFR § 177.10(a). The Chief of the Value Branch of the Division of Classification and Valuation, Irving W. Smith, Jr., specifically stated on redirect examination that TAA # 10 is a ruling (R. 66).

98

As a ruling TAA#10 established a uniform practice under 19 CFR § 177.10(b). Since the unpublished telex ruling in issue abrogated TAA#10 and imposed a higher rate of duty or charge on the merchandise in question, the telex ruling must find that TAA#10 was clearly wrong. 19 CFR § 177.10(b). However, there is no indication that this ruling found TAA#10 to be clearly wrong. Further, before the publication of a ruling which has the effect of changing a practice and which results in the assessment of a higher rate of duty, notice that the practice (or prior ruling on which the practice is based) is under review must be published in the Federal Register and interested parties must be given the opportunity to make written submission as to the correctness of the contemplated change. 19 CFR § 177.10(c). The court has not been able to uncover the required publication in the Federal Register nor has defendant come forward with such evidence.

In view of the foregoing it is not beyond peradventure that plaintiffs have a likelihood of success on the merits. This is not meant to be construed as a procedural or substantive determination of these facts by this Court. It should be construed only that sufficient questions have been raised as to permit plaintiffs further inquiry on a full trial on the merits without losing their position prior to the abrogation of TAA#10.

Under the immediate irreparable harm standard, plaintiffs have not conclusively demonstrated that they will be irreparably harmed without the injunction. However, there is no requirement that plaintiffs demonstrate *conclusively* that they will suffer irreparable harm. Plaintiffs must show that there exists a viable threat of serious harm which cannot be undone. *S. J. Stile Associates Ltd.* v. *Dennis Snyder, supra.* The court will not issue a preliminary injunction merely to prevent a possibility of injury, even though the prospective injury may be great. *PPG Industries Inc.* v. *United States, supra.* As presently existing, actual threat must be shown. *State of New York* v. *Nuclear Regulatory Commission,* 550 F.2d 745 (2d Cir. 1977); Wright & Miller, *Federal Practice and Procedure, Civil,* § 2948 (1973).

In the present action, plaintiffs have adequately demonstrated that there is a real and actual threat of immediate irreparable injury. A cursory look at the difference in valuations and subsequent duties imposed indicates that plaintiffs may readily be driven out of business. In fact, plaintiff American Air is currently in a Chapter XI bankruptcy. Threat to a business enterprise is considered a basis of irreparable injury. This Court has recently stated: "It is difficult for this court to envision any irreparable damage to a plaintiff and his business more deserving of equitable relief than the very loss of the business itself." *McAfee* v. *United States,* 3 CIT 20, 531 F. Supp. 177 (1982). *Semmes Motors, Inc.* v. *Ford Motor Co.,* 429 F.2d 1197 (2d Cir. 1970).

In reviewing the balancing of the hardships placed upon the parties, it is evident that the scale tips decidedly in plaintiffs' favor. To reiterate, plaintiff *American Air* may be driven out of business as is true of plaintiff *McAfee* if the preliminary injunction is not granted. Further, defendant can be adequately protected by the posting of certain bonds by plaintiffs, *Ohio Oil Co.* v. *Conway,* 279 U.S. 813 (1929). The bonds posted pursuant to Rule 65(c) will protect the public interest and the revenue derived from import duties. In view of this protection, it is in the public interest to impose this preliminary injunction with a subsequent full hearing on the merits to insure that defendant is complying with its own regulations pursuant to legislative mandate and affording plaintiffs their right to due process of law.

In conclusion, this Court recognizes that a preliminary injunction is an extraordinary remedy which should be granted sparingly, *Dorfmann* v. *Boozer,* 414 F. 2d 1168 (D.C. Cir. 1969). However, such relief is appropriate where there is a likelihood of success on the merits and the harm to movant is demonstrated to be irreparable. *Blackwelder Furniture Co.* v. *Selig Manufacturing Co.,* 550 F. 2d 189 (4th Cir. 1977). This is especially true where the person against whom the injunction is issued can be adequately protected by bonding or other means, *American Air Parcel Forwarding Co.* v. *United States,* 1 CIT 293, 515 F. Supp. 47 (1981).

The only issue remaining for determination is the posting of a bond pursuant to Rule 65(c). This Court is fully aware that plaintiff *American Air* is in financial difficulty. It is likely that plaintiff *McAfee* will follow the same route if the injunction is not granted. However, if plaintiffs file single entry bonds for double the amount of ordinary Customs duties of the merchandise in addition to a bond for the sum of twenty five thousand ($25,000) dollars to be filed with the Clerk of the Court of International Trade, defendant will be adequately protected.

Accordingly, it is hereby

Ordered that plaintiffs' motion for a preliminary injunction is granted on condition that plaintiffs jointly file a bond in the amount of twenty five thousand ($25,000) dollars with the Clerk of the Court of International Trade pursuant to Rule 65(c) of this Court, and on condition that plaintiffs file single entry bonds in double the amount of ordinary Customs duties of the merchandise entered; and it is further

Ordered that C.S.D. 81-72 be reinstated as initially promulgated; and it is further

Ordered that all prior liquidations not in accordance with C.S.D. 81-72 be cancelled; and it is further

Ordered that plaintiffs shall post the required Court bond and single entry bonds relating to the cancellations of any prior liquidations within fifteen (15) days of the entry of this order by the Clerk; and it is further

Ordered that plaintiffs' motion to file a supplemental memorandum of law is granted, and has been considered by this Court in the instant decision.