HYUNDAI PIPE CO., LTD., PUSAN PIPE CO., LTD., AND KOREA STEEL PIPE CO., LTD., PLAINTIFFS v. U.S. DEPARTMENT OF COMMERCE AND THE UNITED STATES, DEFENDANTS, AND STANDARD PIPE SUBCOMMITTEE OF THE COMMITTEE ON PIPE AND TUBE IMPORTS, INTERVENOR-DEFENDANT

Court No. 87-03-00535

## MEMORANDUM AND ORDER

(Dated April 1, 1987)

*Mudge Rose Guthrie Alexander and Ferdon (Donald B. Cameron, Jr., Julie C. Mendoza* and *Christopher F. Corr)* for the plaintiffs.

*Richard K. Willard,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Velta A. Melnbrencis*); and Office of the Deputy Chief Counsel for Import Administration, U.S. Department of Commerce (*Leila Afzal*) for the defendants.

*Schagrin Associates (Roger B. Schagrin* and *Paul W. Jameson)* for the intervenor-defendant.

AQUILINO, *Judge:* This action raises issues of unusual sensitivity, including the propriety of judicial intervention in on-going administrative proceedings, protection of confidential information, effective assistance of counsel in the absence of access to such information and the interaction of attorneys in zealously representing the competing interests of their clients.

## BACKGROUND

On July 9, 1986, the International Trade Administration, U.S. Department of Commerce determined to initiate a review pursuant to 19 U.S.C. § 1675 of certain circular welded carbon steel pipes and tubes from Korea, Investigation No. A–580–007, 51 Fed. Reg. 24,883. Thereafter, the Department presented questionnaires to the Hy-

undai Pipe Co., Ltd., the Pusan Steel Pipe Corporation and the Korea Steel Pipe Co., Ltd., each of which apparently has provided responses, including commercially-sensitive information.

In December 1986, counsel for the petitioners below had requested release of those responses in full, subject to an administrative protective order ("APO"). The respondents' attorneys sent a letter to Commerce dated January 5, 1987 objecting to release of their confidential information for the following reasons:

> It is our understanding that counsel for petitioners, in an [other] antidumping investigation * * * may have violated the terms of the APO and disclosed confidential information. We are not aware of any sanctions that have yet been applied to counsel.
>
> Given this situation, counsel for petitioner should, at the very least be required to make a compelling case for why release of confidential information is required and why non-confidential summaries are inadequate. Secondly, the Department must seriously weigh counsel's past conduct against the counsel's need for the information—i.e. counsel should not be granted automatic access to confidential data under APO simply because they have requested it.
>
> Finally, until the Department makes a final ruling and administers sanctions for any previous violation which may have occurred, counsel should be denied access to further confidential information until the pending dispute is finally resolved.[1]

In a letter[2] apparently sent March 4, 1987, Commerce notified the respondents of its decision to release their confidential information to the petitioners' counsel. A copy of a "recommendation memorandum" accompanied the letter which stated, in part:

> The Department has not yet completed its investigation into the alleged violation. Therefore, we have no basis for not releasing the proprietary information under APO.[3]

This action was then commenced, praying, in part, for a permanent injunction "restraining the defendants from disclosing business proprietary information submitted by plaintiffs until Commerce makes a final determination in accordance with law concerning APO violations". Verified Complaint, para. 24(b). A temporary restraining order and a preliminary injunction were also requested. Orders have been entered, temporarily restraining the defendants from disclosure,[4] and a hearing was held on plaintiffs' application for a preliminary injunction on March 23, 1987.

---

[1] Exhibit C to Verified Complaint. Exhibits E, F and G to plaintiffs' pleading relate to the alleged violations of the protective order in the other dumping investigation.

[2] Exhibit A to Verified Complaint.

[3] *Id.* The memorandum also indicates that the petitioners' counsel made a satisfactory demonstration of need for access to the disputed information.

[4] The plaintiffs, have posted security in conformity with CIT Rule 65(c).

## DISCUSSION

The essence of defendants' opposition to this application is as quoted above, namely, until the Department completes its investigation, it perceives no basis to withhold plaintiffs' secrets. They do not contest this court's jurisdiction, whether based specifically on 28 U.S.C. § 1581(i)(2) or (i)(4), but they also do not offer any timetable for completion of the investigation. Their perception as to jurisdiction is sound, while their sense of the stakes herein is mystifying.

To begin with, whether or not disclosure publicly of protected, confidential information occurred some 15 months earlier in the other proceeding before Commerce, none of the parties at the March 23 hearing dispelled the cloud that has arisen in this regard.[5] Indeed, a judge of this Court of International Trade has reached a disturbing conclusion on the matter in an unpublished opinion dated December 17, 1986 in an action, CIT No. 86–04–00482, raising the same issue presented here. Moreover, some eleven months earlier in yet another action based on the identical issue, to wit, CIT No. 86–04–00451, the court entered an order stating:

> * * * Commerce has not promulgated procedures for resolving allegations of violation of APOs, although Commerce has indicated that it is in the process of preparing for issuance of such guidelines. In the absence of such guidelines, the court finds that in order to prevent irreparable harm to plaintiff, Commerce must be directed to act as expeditiously as possible to resolve any allegations of violation of this APO and to impose sanctions if appropriate. SO ORDERED.

Apparently, rather than comply with this direction to act expeditiously to resolve the allegations of breach of confidence, the Department has promulgated extensive Procedures for Imposing Sanctions for Violation of an Antidumping or Countervailing Duty Protective Order.[6] Besides filling the void found by the court to exist, *supra*, these regulations may well satisfy the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, and provide counsel caught in a dilemma of the kind now before the court with guidelines as to what to expect. In fact, there is some indication, though not clearly articulated at the March 23 hearing, that Commerce and the attorneys in question are already intertwined in this new regime. However, at the hearing, there was an inability or an unwillingness to state how much additional time is required for the Department to reach a final decision as contemplated by section 16 of the Procedures, although this court is not persuaded that a considerable, additional amount should be necessary. At least, no facts tending to support a contrary finding have been adduced.

---

[5]*Compare, e.g.,* Verified Complaint, para. 17 and Exhibits E, F and G thereto *with* transcript of proceedings on March 23, 1987 [hereinafter cited as "March 23 Tr."] *passim.*

[6]See Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction [hereinafter cited as "Defendants' Memorandum"], Exhibit B.

Rather, the defendants rest their opposition on a number of arguments, some of which have basis in theory or in fact. For example, the accused attorneys "are likely to take extreme precautions to protect the proprietary information which is disclosed to [them] under another APO and to utilize the information only for the specific purposes contemplated by the APO in order not to prejudice the results of the investigation." Defendants' Memorandum, p. 4. Secondly, there is no allegation that those lawyers have violated protective orders in any other proceedings that have brought them before the Department.[7] Another argument is that "counsel have demonstrated need for access to the proprietary information.[8]"

Fourth, the protective order they have signed below contains the "specific admonition that its breach would lead to referral to the ethics panel of the appropriate bar associations"[9] and would subject them to appropriate sanctions. In other words, "Commerce has adequate sanctions to protect the information from disclosure". *Id.* at 7.

Whatever the degrees of truth of those arguments, they skirt the problem the plaintiffs face, namely, the sharing with Commerce of their commercial secrets in the interest of intelligent analysis and fair enforcement of the trade laws but without firm expectation that utmost efforts will be undertaken to safeguard this information. That is, while there is little doubt that administration of those laws places a heavy burden on Commerce, the passage of 15 months and two lawsuits, coupled with a just-trust-us stance in this action, give rise to serious doubt now as to the Department's commitment to the appearance of concern for the preservation of confidentiality.

This apparent attitude is surprising since it was only with passage of the Trade Agreements Act of 1979 that Congress, in enacting section 777(c) thereof, specifically authorized the disclosure, though limited, of the kind of information at issue herein. Indeed, notwithstanding this provision for "limited disclosure of certain confidential information", Commerce has opposed such disclosure on the ground

> that future antidumping and countervailing duties investigations may be impeded because foreign producers will be reluctant to disclose information under the cloak of confidential treatment where the confidentiality promise is readily sidestepped.

*Monsanto Industrial Chemicals Co.* v. *United States,* 6 CIT 241, 242 (1983). In that case, the court affirmed the Department's decision not to grant access to certain confidential information on the following ground:

---

[7]*See id.* at 5, n. 3 Footnote 1 to Defendant-Intervenor's Opposition to Motion for Preliminary Injunction lists those proceedings.

[8]Defendants' Memorandum, p. 7. The best evidence of this is plaintiffs' refusal to withdraw, as Commerce offered on March 4, 1987 [*see* Exhibit A to Verified Complaint], the information sought to be protected. *See* March 23 Tr. at 24–26. That is, the plaintiffs consider this data crucial to the Department's dumping analysis, ergo the petitioners' views thereon are of like import.

[9]Defendants' Memorandum, p 7, n. 4.

\* \* \* Release of such requested sensitive confidential documents at the primary stage of an investigation \* \* \* surely dampens the propensity of foreign producers to divulge confidential information in future trade cases. The overall domestic public interest is thereby placed at a distinct disadvantage in rectifying future wrongs caused by foreign trade predators. 6 CIT at 243.

Similarly, the court in *Akzo N.V.* v. *U.S. International Trade Commission*, 808 F.2d 1471, 1483 (Fed.Cir. 1986), recognized that

in order to discharge its statutory responsibilities within the strict statutory time limits, the Commission is heavily dependent on the voluntary submission of information. Disclosure of sensitive materials to an adversary would undoubtedly have a chilling effect on the parties' willingness to provide the confidential information essential to the Commission's fact-finding processes.

Clearly, this reasoning applies equally to access decisions made by the International Trade Administration.

*Akzo* sustained the Commission's decision not to grant adversary management and in-house counsel access to confidential business information. Of course, there are innumerable cases involving international trade and other areas of the law where courts have exercised caution when confronted with demands for disclosure of such information. *See, e.g., A. Hirsh, Inc.* v. *United States,* 11 CIT 208, Slip Op. 87–35 (March 27, 1987), and the cases cited therein.

The issues of confidentiality resolved by those decisions, however, were directly before the respective courts. That is not true here. Rather, Commerce has the responsibility to police its protective orders, and, as with other matters within its competence, its judgment is entitled to deference. *Cf. Smith-Corona Group* v. *United States,* 713 F.2d 1583 (Fed.Cir. 1983). Nevertheless, this court has jurisdiction over this action,[10] an issue the Department does not contest, nor does it contend that the plaintiffs have failed to exhaust their administrative remedies.

Instead, the defendants challenge plaintiffs' ability to obtain a preliminary injunction, based as it must be on the four traditional criteria for grant of such extraordinary relief set forth, for example, in *S.J. Stile Associates Ltd.* v. *Snyder,* 68 CCPA 27, 30, C.A.D. 1261, 646 F.2d 522, 525 (1981), to wit:

\* \* \* (1) A threat of immediate irreparable harm; (2) that the public interest would be better served by issuing than by denying the injunction; (3) a likelihood of success on the merits; and (4) that the balance of hardship on the parties favored appellant.

---

[10] *See, e.g., Sacilor, Acieries et Laminoirs de Lorraine* v. *United States,* 3 CIT 191, 542 F.Supp 1020 (1982); *Arbed, S.A.* v. *United States,* 4 CIT 132 (1982).

Clearly, the plaintiffs are faced with a *threat* of *immediate*[11] irreparable harm. Not only is the revelation of a secret an irrevocable act, but this and other courts have concluded that any rights of a party injured by either advertent or inadvertent use of confidential information in violation of a protective order could not redress that particular, irreparable harm. *See, e.g., A. Hirsh Inc.* v. *United States,* Slip Op. 87–35 at 6, citing *Akzo N.V.* v. *U.S. International Trade Commission,* 808 F.2d at 1483. Thus, while it may prove to be true that the accused attorneys are no more fallible nor less trustworthy than others bearing the burden of trust in dumping proceedings before the Department, the court finds that sufficient uncertainty currently exists to constitute a threat.

Certainly, caution must be, and is, the guidepost in dealing both with sensitive information and the sensitivities of those who obtain access to it. Perhaps caution has led Commerce to prolong its consideration of the alleged violations. But in taking its time to deal with the lawyers in question, the Department cannot act in haste to disclose the other side's secrets. That is, to reveal them on the ground that the "Department has not yet completed its investigation" by now has the appearance of action arbitrary, capricious, and an abuse of discretion within the meaning of 5 U.S.C. § 706, and the court is thus unable to conclude that there is little or no likelihood that the plaintiffs will succeed on the merits.

Furthermore, some courts have held that, although the extraordinary remedy of a preliminary injunction is not available unless the moving party's burden of persuasion is met as to all four of the above factors, the showing of likelihood of success on the merits is in inverse proportion to the severity of the injury the moving party will sustain without injunctive relief, *i.e.,* the greater the hardship the lesser the showing. *See Ceramica Regiomontana, S.A.* v. *United States,* 7 CIT 390, 395, 590 F.Supp. 1260, 1264 (1984); *American Air Parcel Forwarding Company, Ltd.* v. *United States,* 1 CIT 293, 300, 515 F.Supp. 47, 53 (1981).[12] Viewed in this light, the plaintiffs assuredly qualify for the relief they request, based on the two "critical factors" indicated. *Id.*

Of course, whatever the relationship of the factors, each must be satisfied by an applicant. Here, the overriding public interest is fair and efficient enforcement of the trade laws of the United States. Inherent in this interest, as indicated above, is an ability of Commerce to obtain meaningful business data, much of which are confidential, from domestic and foreign enterprises alike. If either side

---

[11]Commmerce's letter, Exhibit C to the Verified Complaint, offered the plaintiffs just two days within which to decide to withdraw their confidential data.

[12]Another formulation has been set forth in cases like *Texaco Inc.* v. *Pennzoil Company,* 784 F.2d 1133, 1152 (2d Cir. 1986), *appeal argued,* 55 U.S.L.W 3511 (U.S. Jan. 12, 1987) (No. 85–1798), as follows:

> In this circuit the standard for issuance of preliminary injunctive relief is well-settled. The plaintiff has the burden of showing irreparable harm *and* (1) either probable success on the merits *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *plus* a balance of hardships tipping decidedly in the plaintiff's favor * * *. The effect of the grant or withholding of such relief upon the public interest must also be considered. [emphasis in original; citations omitted]

develops doubts about the mechanism for protecting its property rights, which is allegedly the case here, the Department's task becomes much more difficult, and the public interest suffers. The mere existence of this action has an impact which doubtless will transcend not only this interim disposition but its ultimate resolution. Indeed, the suit appears to be an outgrowth of the two earlier suits involving different litigants but the identical, troubling issue, which has been left unresolved.

To the extent that the plaintiff enterprises have ordained the commencement of this action[13], it is understandable. The court cannot, and therefore does not, conclude from the record before it that this suit has been brought by their counsel for unacceptable reasons of harassment and embarrassment,[14] for which there are appropriate sanctions. Whatever plaintiffs' motivation, a cloud hangs over the heads of the accused attorneys, and expeditious resolution of the charges is thus clearly in their professional interests.

In sum, both the public and the professional interests tilt in favor of rapid removal of this cloud, with disclosure of the confidential information held in abeyance. This is all the relief plaintiffs' application seeks, and the court concludes that the public interest would be better served by granting than by denying it.

Indeed, grant of this relief will have the effect of leaving the matter squarely where it belongs—in the hands of Commerce, albeit preliminarily enjoined from extending plaintiffs' confidential data to the petitioners' counsel. It was they who filed a request on September 25, 1985 for review pursuant to section 1675[15], but it was not until July 9, 1986 that the Department initiated that review. *See* 51 Fed.Reg. 24,883 (July 9, 1986). The notice expresses an intent of issuing final results by July 31, 1987.[16] These facts, coupled with the amount of time which has elapsed since Commerce could have and should have commenced its investigation of the attorneys in question, tip the delicate balance of hardships toward the plaintiffs. Moreover, while the time could come when the petitioners would be advised to retain new attorneys, that moment does not appear near at hand. And such a contingency could completely dissipate with the rendering of a final decision by Commerce.

\*        \*        \*        \*        \*        \*        \*

Now, therefore, in view of the foregoing, it is

ORDERED that the defendants and their officers, employees, agents, servants, sureties and assigns be, and they hereby are, enjoined from disclosing to the petitioners' counsel in Investigation No. A–580–007 business proprietary information submitted by the plaintiffs therein until such time as the U.S. Department of Com-

---

[13]*Cf.* March 23 Tr. at 14.

[14]Were it otherwise, it could raise questions as to whether counsel has complied with Canon 7 of the Lawyer's Code of Professional Responsibility, and all of its ramifications, in commencing this action.

[15]*See* Defendant-Intervenor's Opposition to Motion for Preliminary Injunction, p. 5.

[16]*Cf. Philipp Brothers, Inc.* v. *United States,* 10 CIT 76, 630 F.Supp. 1317, 1323–24 (1986).

merce or its officers, employees, agents or servants have rendered a final decision within the meaning of section 16 of its Procedures for Imposing Sanctions for Violation of an Antidumping or Counter-vailing Duty Protective Order as to alleged administrative-protec-tive-order violations by those counsel in Investigation No. A–549–502; and it is further hereby

ORDERED that the plaintiffs post security in the amount of $10,000 on or before the close of business on April 8, 1987.