CHILEAN NITRATE CORP., PLAINTIFF *v.* UNITED STATES, DEFENDANT, AND OLIN CORP., DEFENDANT-INTERVENOR

Court No. 87–07–00764

(Decided July 29, 1987)

*Busby, Rehm and Leonard (John B. Rehm* and *Munford Page Hall, II)* for plaintiff.
*Richard K. Willard,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, *Elizabeth C. Seastrum,* Civil Division, United States Department of Justice, for defendant.
*Beveridge & Diamond (Alexander Sierck)* for defendant-intervenor.

MEMORANDUM OPINION AND ORDER

RESTANI, *Judge:* Plaintiff in this action challenges a final annual review determination applicable to imports of sodium nitrate for industrial use from Chile.

Pursuant to a request for a temporary restraining order the court entered an order enjoining liquidation of entries covered by the annual review at issue, pending resolution of the motion for preliminary injunction. The parties do not appear to dispute the injunction against liquidation inasmuch as liquidation is normally enjoined

upon request in order to preserve the court's jurisdiction over entries permanently affected by annual review determinations. *See Zenith Radio Corp.* v. *United States,* 710 F.2d 806 (Fed. Cir. 1983). This aspect of the order shall be enlarged to continue until final resolution of the action.

In addition, plaintiff sought and obtained a temporary order restraining defendant from collecting cash deposits on future imports at the rate established by the annual review. Upon consideration of oral testimony, argument and further briefing the court has determined that this aspect of the temporary order should be dissolved. Plaintiff's motion for preliminary injunction is denied to this extent, and deposits shall be collected in the ordinary manner as directed by the court following hearing on July 21, 1987.

### DISCUSSION

The parties are agreed that four factors must be considered upon a motion for preliminary injunction. Although the exact treatment of the four factors has not been agreed to, the court deems it appropriate to weigh the factors together in a sliding scale manner. *See American Air Parcel Forwarding Co.* v. *United States,* 1 CIT 293, 299, 515 F. Supp. 47, 53 (1981). The first factor the court will address is plaintiff's likelihood of success on the merits.

Plaintiff claims that defendant failed to follow its own regulation when it rejected plaintiff's offer on the first day of verification to submit missing United States sales data. The regulation reads in relevant part:

**§ 353.51 Verification of information; use of best information available.**

(b) Whenever information cannot be satisfactorily verified, or is not submitted in a timely fashion or in the form required, the submitter of the information will be notified and the affected determination will be made on the basis of the best information then otherwise available which may include the information submitted in support of the petition. An opportunity to correct inadequate submissions will be provided if the corrected submission is received in time to permit proper analysis and verification of the information concerned; otherwise no corrected submission will be taken into account. Where a party to the proceeding refuses to provide requested information, that fact may be taken into account in determining what is the best available information.

19 C.F.R. § 353.51(b) (1986).

Defendant argues that its regulation requires that plaintiff submit the missing information *prior* to verification. This is not the plain language of the regulation. There are important policy considerations behind the regulation which have been examined previously in the context of application of the best information available

rule,[1] but the plain words of the regulation present a substantial question. On the other hand, the parties have indicated that there is very little information in the record which would explain plaintiff's failure to submit the vital information prior to verification. Thus, if defendant complied with the regulation, it would be difficult to say that it acted arbitrarily and abused its discretion. This is not a case where a decision in plaintiff's favor on the merits can be predicted. Thus, the court cannot ease plaintiff's burden in meeting the other strict standards for a preliminary injunction.

Second, the public interest is not a determining factor here. The public interest at stake on both sides is the fair and efficient operation of the antidumping laws, and this factor is in lock step with the merits.[2]

Third, as to the balance of hardships, plaintiff's case is formidable. It offers a bond to secure defendant, so defendant risks little. Defendant-intervenor may be harmed if the injunction is wrongly granted. There is the potential that its competitor, the plaintiff, might be forced to raise prices to offset margins if cash deposits are required. If only a bond is required, the evidence presented leads to the conclusion that no price increase would be attempted. The effects on defendant-intervenor are, however, indirect at best. Plaintiff's hardship, in contrast, is direct and substantial, as will be discussed in connection with consideration of the most vital factor, likelihood of irreparable harm. In connection with this factor, the court notes that plaintiff may recover its immediate expenditure with interest if it is finally determined that plaintiff does not owe the duties. Thus, plaintiff is not irreparably harmed in the sense that it may recover the discrete sum of money required to be deposited. *See Virginia Petroleum Jobbers Ass'n v. F.P.C.,* 259 F.2d 921, 925 (D.C. Cir. 1958) (the opportunity to recover previously advanced funds weighs against a finding of irreparable harm).

The real question is whether plaintiff will suffer significant and permanent monetary injury as a consequence of posting large cash deposits. The facts established relevant to this issue are as follows: Previous annual reviews utilizing plaintiff's data have resulted in margins in the range of one percent. The margin found here, without consideration of plaintiff's data, was approximately thirty-three percent. [     ][3] It had a loss in 1986.

The court notes that because of the hardship on plaintiff and the limited legal issue on the merits, the court has set a schedule which should ensure this matter is before the court for resolution in September. Thus, the court is most concerned with the effects of cash

---

[1] *See Atlantic Sugar, Ltd.* v. *United States,* 744 F.2d 1556, 1559–62 (Fed. Cir. 1984).

[2] The court rejects defendant's argument that the requirement of cash deposits cannot be enjoined, or that it would not be in the public interest to enjoin the cash deposit requirement, because of the legislative history indicating the need for cash deposits. If the cash deposit requirement is enjoined it would be because collection of the deposit in these circumstances otherwise would likely violate the law. The purpose of injunctive relief is to prevent harm in such circumstances.

[3] The brackets in this memorandum designate sentences which have been deleted because they contain confidential business information

deposits over the next few months. [        ][3] Given these factors and plaintiff's poor profit history, the requirement of cash deposits for a few months, or the injunction against such deposits, would not appear capable of causing a dramatic shift in plaintiff's business fortunes. Nonetheless, the court must consider whether requiring cash deposits would cause severe disruption to plaintiff's business.

Plaintiff's witness indicated that it is unlikely plaintiff could obtain financing to cover the duties or raise prices to generate the extra income without losing customers on a more or less permanent basis. The court concludes that plaintiff has demonstrated these results are possible; it has failed, however, to demonstrate that they are probable. Plaintiff's witness did not testify that financing was sought and denied. No financial statement demonstrating lack of reserves was presented. No request to plaintiff's solvent parent (it is a wholly owned subsidiary of its inventory supplier) for extension of its usual ninety day payment terms or other assistance was made. When questioned about which customers would tolerate a price increase and in what amounts, plaintiff's witness was vague.

Plaintiff's list price per ton is about $180. The sole domestic supplier's list price is about $70 higher. Even assuming that plaintiff is correct about some of the reasons for the difference, there appears to be some room for a price increase. In addition, although its inventory might not be located in the most convenient warehouses, as far as the court can determine plaintiff has on hand about twenty-five percent of its annual industrial sodium nitrate imports. This stock should help ease the short term problem.

Plaintiff's case was noticeably lacking in documentary evidence. No marketing studies, written financial data or other hard evidence of the serious permanent harm which would result from denial of the injunction was presented. Plaintiff has demonstrated hardship and a *potential* for serious damage; it has not demonstrated likelihood of irreparable harm. Accordingly, plaintiff's motion to post bond instead of cash deposits pending resolution of this matter is denied.