Erstine Clark McAFEE d/b/a E. C. McAfee Customs Broker, a sole proprietorship, Plaintiff,

v.

UNITED STATES, Secretary of the Treasury, Commissioner of Customs, Regional Commissioner of Customs for the Boston Region, District Director at Buffalo, et al., Defendants.

Court No. 81–12–01729.

United States Court of International Trade.

Jan. 13, 1982.

Richard A. Kulics, Detroit, Mich., for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch by Robert H. White, New York City, for defendants.

*Memorandum Opinion And Order On Plaintiff's Application For A Preliminary Injunction*

BOE, Judge:

An Order to Show Cause in the above-entitled action was issued by the Honorable Morgan Ford, Judge, on the 17th day of December 1981 directing the defendants therein to appear before this court to show cause "why a preliminary injunction should not be issued prohibiting the denial of immediate delivery privileges" to the plaintiff herein. Pursuant to a consent motion, approved by the court, this proceeding was brought on for hearing before the undersigned on January 6, 1982.

From the record before the court and the testimony adduced, the following facts have been established.

The plaintiff, a licensed customs broker engaged in business at Buffalo, New York during the time in question, served as a broker for International Citrus of Canada, Inc. The latter company shipped through the plaintiff at the port of Buffalo orange juice which previously had been imported from the United States and which merchandise, while in Canada, had only been "packaged" for its return to the United States. Pursuant to a determination made by the Customs Service, the merchandise in question was accorded a duty-free status upon its re-entry into the United States.

Customs Regulations pertaining specifically to the borders between the United States and Mexico and Canada provide that a special entry permit may be issued permitting the immediate release of merchandise passing through the respective border ports of entry between the hours of 5:00 p. m. and 8:00 a. m., during which time the Customs House is closed, in order to avoid unusual loss or inconvenience to the importer or carrier. The plaintiff possessed a special entry permit and in compliance with the order of Customs had posted a $100,000 general term bond with an approved corporate surety.

In those instances where the client of a broker did not possess his own bond under which an entry of merchandise could be made, a broker frequently entered merchandise under the broker's bond as the "importer of record." This procedure was followed by the plaintiff with respect to the entries of merchandise made in behalf of International Citrus of Canada, Inc.

As aforenoted, pursuant to a determination made by Customs, the merchandise in question was entered free of duty until July 1980 at which time it appears that the plaintiff was advised by Customs that the merchandise might not qualify for duty-free status because a drawback might have been claimed on the merchandise by the United States exporter. Upon receiving notice of the determination by Customs to rescind the duty-free status of the packaged orange juice, the plaintiff sought to file in July of 1980 with Customs a "Declaration of Owner," identifying International Citrus of Canada, Inc. as the actual owner, together with its superseding bond. The latter instruments were not accepted by Customs. As a result of the determination of Customs to rescind the duty-free status of the merchandise in question, 27 entries which had been made between May 1, 1980 and July 15, 1980 became subject to duty or additional duty and were subsequently liquidated on June 5, 1981 in a total amount of $52,447.52.

On June 10, 1981, predicating its request upon the provisions of 19 U.S.C. § 1520(c), the plaintiff sought to correct the entry papers previously filed with respect to the merchandise in question at the time of their respective entries into the United States in order to show International Citrus of Canada, Inc. as the actual owner. This request was denied on June 12, 1981 by Customs.

Plaintiff filed on July 18, 1981, its protest to the liquidation of the merchandise in question as well as to the refusal of Customs to permit a correction of the designation of the actual owner. The protest was denied by Customs on November 20, 1981.

A directive was made by the Regional Commissioner of the Customs Service under date of October 30, 1981 to suspend the immediate delivery privileges of the plaintiff. A verbal recision of this written directive delayed implementation thereof until a further suspension directive was made by letter under date of December 15, 1981. It is to the implementation of this suspension of plaintiff's immediate delivery privileges that the Temporary Restraining Order issued by this court under date of December 17, 1981 has been directed and concerning which a preliminary injunction is now sought by the plaintiff in this proceeding.

The foregoing statement of facts purposely has been detailed to illustrate the substantial questions going to the merits of the above-entitled action, which necessarily require a determination more thorough and intensive than permitted in the present proceeding. Whether the plaintiff should have been permitted by Customs to file the "Declaration of Owner" in behalf of its client, International Citrus of Canada, Inc., together with the company's superseding bond and whether, pursuant to the provisions of 19 U.S.C. § 1520(c), the plaintiff should have been permitted to correct the entry papers originally filed by him to indicate the actual owner, are questions which have not been addressed by the parties in the instant proceedings and await resolution at a trial on the merits.

The plaintiff has protested the imposition of duty on 27 entries which previously, with the approval of Customs, had been entered duty free. From the record and the evidence presented, it appears that the duties

imposed in 1980 on the 27 entries were premised on a supposition that a drawback might have been claimed by the exporter of the orange juice in the United States. At the hearing in this proceeding and upon direct inquiry by the court, witnesses of the Government, representing the Regional Commissioner of Customs, Region 1, were unable to state whether any drawback, in fact, has ever been paid to the United States exporter. No effort was made by the Government to confirm the payment of any drawback, a fact upon which the validity of the duties imposed are necessarily predicated. The materiality of such evidence is apparent. If the protested duties assessed on the merchandise in question are determined to be invalid, it concurrently follows that the sanction of suspension imposed by Customs on the plaintiff for his failure to pay the cumulative duties would constitute an improper and arbitrary act.

The standard of "likelihood of success," one of the requisites for the issuance of the preliminary injunction, indeed, can become so mathematically formularized and circumscribed by the time frame during which evidence is presented as to grossly hinder the court in the making of its determination as to the need for equitable relief as well as the respective parties. Circuit Judge Leventhal, speaking for the U. S. Court of Appeals, District of Columbia Circuit, in the case of *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C.Cir.1977), has placed the application of this standard for the issuance of a preliminary injunction in a clear perspective:

> Our holding is generally in accord with the movement in other courts away from a standard incorporating a wooden "probability" requirement and toward an analysis under which the necessary showing on the merits is governed by the balance of equities as revealed through an examination of the other three factors. In a leading case, Judge Frank, speaking for the Second Circuit, stated:
>
> > To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i.e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.

*Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953) (footnote omitted).

This court finds from the record and testimony in the instant proceedings that as stated in *Hamilton Watch Co., supra*, plaintiff has raised questions going to the merits which are so serious and doubtful, "as to make them a fair ground for litigation and thus for more deliberative investigation."

Attention of the court, accordingly, turns to the threat of immediate irreparable injury that will result to the plaintiff in the event of denial of the injunctive relief sought herein.

Mr. Merlin J. Donnelly, witness for the Government and a representative of the Regional Commissioner of Customs, Region 1, acknowledged that the suspension of the immediate delivery privilege is a severe sanction. Testimony of the plaintiff, E. C. McAfee, uncontroverted by any competent evidence, asserted that the suspension of the immediate delivery privileges would cause the plaintiff to go out of business. Further testimony revealed that every effort had been made to withhold information from plaintiff's clients as to the efforts of Customs to impose the intended sanction in order to prevent these clients from immediately transferring their business to other brokers. In this connection the evidence clearly reflects that the brokerage business is highly competitive; that even at this point in time other brokers had endeavored to solicit the business of plaintiff's clients.

It is difficult for this court to envision any irreparable damage to a plaintiff and his business more deserving of equitable relief than the every loss of the business itself.

This court, indeed, recognizes that in granting injunctive relief the injury to the public interest must be fully considered. In the instant proceeding, however, balancing the injury or harm resulting to the plaintiff as against the injury resulting to the public interest, the court is satisfied that the latter is outweighed by the former.

The duties alleged by Customs to be due and owing by the plaintiff is secured by a surety bond equal to almost twice the amount of the assessed cumulative duties on the merchandise in question. A demand for payment from the surety has been made by Customs. Although payment by the surety has not yet been made, it is acknowledged that the time for its response has not expired as of this date. Except for the time and effort that might be expended, the court fails to discern wherein any material injury has resulted to the public interest or will result thereto by virtue of the issuance of the preliminary injunctive relief sought by the plaintiff in this proceeding.

Now therefore, good cause appearing, it is hereby accordingly

ORDERED that during the pendency of the above-entitled action, the Secretary of the Treasury, the Commissioner of Customs, the Regional Commissioner of Customs of the Boston Region, the District Director at Buffalo, New York and their servants, agents and assigns are hereby enjoined from denying immediate delivery privileges to the plaintiff and from requiring his deposit of estimated duties prior to the release of plaintiff's merchandise from Customs custody and it is further

ORDERED that the defendants are enjoined from taking any action in any manner related to the suspension of immediate delivery privileges against the plaintiff or against third party clients of the plaintiff unless approved by the court, and it is further

ORDERED that during the continuation of the preliminary injunction herein granted, the plaintiff shall forthwith and as a condition to the granting of the preliminary injunction herein, file with this court a bond with sufficient surety in the sum of $10,000 as security for the payment of costs and damages as may be incurred by any party who has been found to be wrongfully enjoined.