SCHAPER MANUFACTURING CO., DIVISION OF KUSAN, INC., PLAINTIFF *v.* THE HONORABLE DONALD T. REGAN, SECRETARY OF THE TREASURY OF THE UNITED STATES, AND THE HONORABLE WILLIAM VON RAAB, COMMISSIONER OF CUSTOMS, DEFENDANTS

(Court No. 83-3-00333)

(Dated March 21, 1983)

Before BOE, *Judge.*

*Plaia & Schaumberg (Tom M. Schaumberg* and *Alice A. Kipel)* for the plaintiff.
*J. Paul McGrath,* Assistant Attorney General; *Joseph I. Lieberman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch *(Deborah E. Rand),* for the defendants.

BOE, *Judge:* The plaintiff is the owner of registered and recorded copyrights in certain toy vehicles, which said copyrights pursuant to customs regulations were recorded with the customs service.

Subsequent to the recording of the copyrights in question, the plaintiff was informed by the customs service that 125 cases of imported merchandise were being held by the Port Director of Customs, Pittsburgh, Pennsylvania, which were suspected to be pirati-

cal of plaintiff's copyrighted toy vehicles. Pursuant to customs regulations plaintiff demanded the imported toy vehicles by excluded from entry into the United States and posted a bond required by the customs service in the amount of $20,448.00.

Subsequently, on November 5, 1982, plaintiff was further informed that the Port Director of Customs in Pittsburgh, Pennsylvania, was holding two additional shipments of imported merchandise which, in turn, were suspected of being piratical copies of plaintiff's copyrighted toy vehicles.

With respect to the latter shipments designated as customs entry 83–800602–7 and customs entry 83–800586–6, the plaintiff again demanded their exclusion from entry into the United States and posted bonds in the respective sums of $83,794 and $14,778 as determined and required by the customs service.

In the respective imported shipments it appears that some of the articles contained therein were piratical copies of the plaintiff's toy vehicles and other articles therein were non-piratical copies. No evidence has been submitted with respect to the number or piratical copies as distinguished from non-piratical copies contained in each shipment. Nor does it appear that the customs service presently has a record of such information. In response to the request of plaintiff that separate bonds be filed with the customs service for each model of a toy vehicle imported and that a determination of a copyright violation accordingly be made on a model by model basis, the customs service at Pittsburgh, Pennsylvania, advised the plaintiff that only one bond per shipment is permitted. On December 29, 1982, and admittedly "prior to transmittal of the case to the Commissioner of Customs or his designee for decision" as provided by 19 CFR § 133.43(c)(4), plaintiff requested in writing the withdrawal of two bonds previously filed by it with the customs service in the amount of $83,794 and $14,778, respectively. On December 29, 1982, as required by 19 CFR § 133.43(c)(4), plaintiff filed in writing a statement agreeing to hold the customs service harmless for any consequence of returning the bonds and the release of the detained articles.

Despite the provision contained in 19 CFR § 133.43(c)(4) that the District Director "shall require" both the copyright owner and the importer to sign such a hold harmless agreement, the importer, Milton D. Myer Co., has refused to file the required statement.

In a communication by customs under date of February 22, 1983 together with a ruling issued on said date, plaintiff was advised:

> 1. That the single bond required of the plaintiff to be posted for each shipment would not be separated on a model by model basis thereby delineating between piratical or non-piratical copies.
>
> 2. That the imported model, "Super Climber" pick-up truck infringed the Scottsdale Copyright Number VA 101–550 owned

by the plaintiff and, accordingly, was denied entry. The request of the importer to re-export said vehicles was granted.

3. That the imported model "Super Climber" jeep did not infringe on plaintiff's Renegade Copyright Number VA 101–548 and, accordingly, said detained imported vehicles were to be transmitted to the importer.

4. That the bonds posted by the plaintiff, the copyright owner, should be released and transmitted in full to the importer.

In a communication with an officer of the port district at Pittsburgh, Pennsylvania, plaintiff's counsel was informed that the customs service would transmit to the importer the three bonds hereinbefore referred to and posted by the plaintiff at such time as notice of re-export of the vehicles determined to have infringed on the copyright of the plaintiff had been received by the customs service.

A Temporary Restraining Order with respect to the bonds in question was made and entered by this court under date of March 4, 1983.

In the instant proceeding the plaintiff seeks a preliminary injunction enjoining the Secretary of the Treasury and the Commissioner of Customs from releasing from their immediate custody and control these bonds posted by the plaintiff. At the hearing on plaintiff's application for a preliminary injunction before this court on March 14, 1983, it was admitted and agreed that the sole purpose in seeking a preliminary injunction was to preserve the status quo with respect to the present custody and control of the bonds posted by the plaintiff with the customs service pending the final determination upon the merits of all issues raised in plaintiff's complaint now on file herein.

In considering plaintiff's request for the issuance of a preliminary injunction, it is necessary that reference be made to the applicable customs regulations relating thereto.

No dispute exists with respect to the authority of the District Director of Customs to seize imported articles which he determines constitute piratical copies of a recorded copyright work. 19 CFR § 133.42. As indicated by the foregoing statements of facts, the provisions of 19 CFR § 133.43 relating to the notice provided by customs to the importer and copyright owner, to the written demand for exclusion of entry by the copyright owner and the filing of a bond in the sums determined by the customs service, have been fully complied with. It is with particular reference to 19 CFR § 133.43(c)(4) that attention is directed with respect to the instant proceeding:

(4) Withdrawal of bond. At any time prior to transmittal of the case to the Commissioner of Customs or his designee for decision, the copyright owner may withdraw a bond filed in accordance with paragraph (b) of this section. Prior to returning

the bond to copyright owner and release of the detained articles, the district director shall require the copyright owner and the importer to file written statements agreeing to hold the United States Customs Service and the district director harmless for any consequence or return of the bond and release of the detained articles. After the withdrawal of a bond, the district director shall release importations of the same article by the same importer without further notice to the copyright owner.

In 19 CFR § 133.44, relating to the determination by the customs service of a disputed claim of piratical copying, likewise requires specific attention:

> § 133.44 Decision of disputed claim of piratical copying.
> (a) Claim of piracy sustained. Upon determination by the Commissioner of Customs or his designee that the detained article forwarded in accordance with § 133.43(c)(1) is a piratical copy, the district director shall seize and forfeit the imported articles in accordance with Part 162 of this chapter, and shall return the bond to the copyright owner.
> (b) Denial of piracy sustained. Upon determination by the Commissioner of Customs or his designee that the detained article forwarded in accordance with § 133.43(c)(1) is not a piratical copy, the district director shall release all such detained merchandise and transmit the copyright owner's bond to the importer.

Notwithstanding the standard requisite for granting a preliminary injunction traditionally utilized by the courts viz, likelihood of success, this court in reviewing the record in the instant proceedings is satisfied that the plaintiff has raised questions going to the merits which are so serious and doubtful, "as to make them a fair ground for litigation and thus for more deliberate investigation." *Hamilton Watch Co.* v. *Benrus Watch Co.,* 206 F. 2d 738, 740 (2d Cir. 1953). In *Hamilton Watch Co.* decision, *supra,* Judge Frank has characterized the purpose of a preliminary injunction as a proceeding which "serves as an equitable policing measure to prevent the parties from harming one another during litigation; to keep the parties, while the suit goes on, as far as possible in the respective positions they occupied when the suit began." *See* also *Lunkenheimer Co.* v. *Condec Corp.,* 268 F. Supp. 667 (S.D.N.Y. 1967).

In the case of *Washington Metropolitan Area Transit Commission* v. *Holiday Tours, Inc.,* 559 F. 2d 841, 844 (D.C. Cir. 1977), Circuit Judge Leventhal has placed the application of the standard for the issuance of a preliminary injunction in clear perspective:

> Our holding is generally in accord with the movement in other courts away from a standard incorporating a wooden 'probability' requirement and toward an analysis under which the necessary showing on the merits is governed by the balance of equities as revealed through an examination of the

other three factors. In a leading case, Judge Frank, speaking for the Second Circuit, stated: "To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i.e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative [sic] investigation." *Hamilton Watch Co.* v. *Benrus Watch Co.,* 206 F. 2d 738, 740 (2d Cir. 1953). [Italics in original; emphasis supplied.]

*McAfee* v. *United States,* 3 CIT 20, 531 F. Supp. 177 (1982).

The plaintiff undisputedly has complied with the requirement of 19 CFR § 133.43(c)(4) in requesting the return of the two bonds posted by it with the customs service. The denial by customs of plaintiff's timely withdrawal request, without further explanation, appears to be premised upon the dubious reasoning that deliberate refusal of the importer to comply with the mandatory requirements of 19 CFR § 133.43(c)(4) to file a written statement agreeing to hold the customs service harmless justifies the release of the bonds in question to the importer. This questionable determination by customs, despite the acknowledged fact that each imported shipment for which a bond had been posted by the plaintiff contained piratical copies as well as non-piratical copies of plaintiff's copyright, indeed, justifies the intervention by this court in the instant proceedings to preserve the status quo pending a determination on the merits.

Denial of plaintiff's application for a preliminary injunction with the resulting release of the bonds in question by the customs service to the importer would thwart the court's ability to maintain the status quo until a final determination on the merits can be made. *Iowa Center Associates* v. *Watson,* 456 F. Supp. 1108 (N.D. Ill. 1978).

The subject matter of the cause of action instituted by the plaintiff is within the jurisdiction of this court to determine and conclude. The transmittal of the bonds in question to the importer by customs may irreparably injure the plaintiff by rendering moot the very claim it has asserted in this court and by subjecting it to a multiplicity of suits, thereby precluding it from the right and opportunity to have the cause of action adjudicated upon the merits in its chosen forum. *Matthews* v. *Rogers,* 284 U.S. 521 (1932).

In assessing and weighing the balance of hardship and/or injury between the respective parties, the court is satisfied that no apparent injury can be said to fall upon the defendant by reason of the issuance of a preliminary injunction. *S. J. Stile Associates, Ltd.* v. *Dennis Snyder,* 68 CCPA 27, C.A.D. 1261 (1981). No obligation is incurred by the defendant, the United States Government, other than to continue to hold the bonds which had been filed therewith

as required by agency regulation. Nor does the court view that any injury or harm to the public interest will result from the issuance of the preliminary injunction. On the contrary, the pertinent customs regulations evince an intent that the public interest would not be served by permitting an importer to deliberately and willfully fail to comply with the required statutory requirements and to unjustly reward such conduct by transmitting to the importer the security which a copyright holder under the laws and regulations of the United States has by it election been permitted to withdraw.

Accordingly, it is hereby

ORDERED that the defendants together with their officers, agents and employees be and are hereby enjoined from releasing and/or transferring or permitting the transfer of certain bonds posted with the customs service by the plaintiff pursuant to 19 CFR §133.43 relating specifically to customs entry numbers 82–807044–5, 83–800602–7, and 83–800586–6, entered at the port of Pittsburgh, Pennsylvania, pending the final determination of the above-entitled action and/or until further order of this court.